All right, let's take up our first case, Warner v. Jackson National Life Distributors in Thornburg. Counsel, please proceed. Thank you, Your Honor. May it please the Court, counsel. I am Sherry Rowe. I represent Jesse Joe Warner, the opponent in this case. She is the daughter of Linda Thornburg Hagler, who is now deceased. Can you hear, Judge? No. I'm so sorry. I'll begin again, if you please. Okay. I am Sherry Rowe. I represent Jesse Joe Warner, the opponent in this case. She was the daughter of Linda Thornburg Hagler, who is now deceased. The opponent is Kevin Thornburg, who was married to Ms. Hagler. The facts are not in dispute, Your Honor. Your Honor, this is about a case about language in a marital settlement agreement as pertains to the proceeds of a life insurance policy. This is a brief background. Ms. Hagler and Mr. Thornburg were married in 1994. They purchased, in 1996, a life insurance policy that was used to pass collateral on a divorce. It was a three-year policy. I didn't say the time of law. I said it was a 20-year policy, if the Court would like to look at that. In 2006, the parties divorced. As a part of that divorce, there was a marital settlement agreement. The language about life insurance is contained in Article VI, and I'll address that in just a moment. In 2011, Ms. Hagler was diagnosed with a terminal bone cancer and a very high chance of survival. And, in fact, she did die in 2012. But in 2011, she changed the beneficiary on that policy that was written by Jackson Nash to her daughter, Jessica Warner, for the purposes of helping take care of a younger sibling with Down syndrome. In 2012, Ms. Hagler died. A claim was made for the proceeds by Ms. Warner. It was opposed by Mr. Thornburg, and that's what brings us to the Court today. The specific language in Article VI of the marital settlement agreement specifically says, each of the parties hereby releases and or waives any interest, beneficial or otherwise, which he or she may have acquired in or to life insurance policy owned by the other, unless specifically retained in this document. That is the sole language that we ask the Court to interpret on which to reverse the circuit court to determine that Mr. Thornburg was to be the recipient of these proceeds. Counsel, this was a jointly owned policy, is that correct? Well, yes, Your Honor, but it was slightly different. If you will look at the policy itself, its purpose was to act as collateral for our mortgage that the parties had while they were here. It had a $100,000 original value. It was the claim. The terms of the policy were, the first, if one of the parties died, it in essence would be his or her policy. So, yes, they jointly owned it initially, but if one of the parties died, then it was his policy or her policy because then the proceeds would be generated because of that party's death. Counsel, let me just follow up on that. I'm looking at Exhibit A in your appendix, which is the, looks like maybe the cover sheet on the policy. Yes, Your Honor. It shows that both parties were the owners, both Kevin and Linda were the owners, and that they were also both insured, so it's insuring the lives of both of them. And per the terms of the policy, upon the death of the first one, then the insurance proceeds would be paid to the beneficiary, the named beneficiary, which they'd originally named each other, I think. I don't think the record reflects exactly who was named as the initial beneficiary, but even without that being the case, Mr. Thorne, had there been a beneficiary, he would have initially been the beneficiary of the policy. Correct. So, at the time of their divorce, it was a jointly owned asset. Yes. But it was not specifically treated in the marital settlement agreement. In other words, there's no reference to this jointly owned asset in Article III, marital property. I don't have that part in front of me, Your Honor. It talks about household items, automobiles, pension plans, bank accounts. It's not specifically mentioned there, nor in Article VI, where it talks about life insurance unless specifically retained in this house, and there's no specifical retention of this Jackson National Policy in that document, in the marital settlement agreement item. So, I guess it would have been better, let's say, if this jointly owned property, this life insurance policy, would have been treated as marital property and specifically designated to whoever it was supposed to go to in that Article III, but it did not. So then we're looking at Article VI. Correct. Which gets us to, if it is a jointly owned asset at the time of the marital settlement agreement, and there is this mutual release, and it says mutual release, it runs to each party. I release everything that I've got in your property, and you release everything that you've got in my property, and if they each own half, or they jointly owned it, and it's a jointly owned asset, how can they mutually release each other, so then who owns it with that mutual release language? Your Honor, they mutually release, in essence, the proceeds of the policy, because until one of them dies, there is no value in the policy to either of them. Once Ms. Thornburg-Hadler died, Mr. Thornburg had released his interest or any expectation of the receipt of the proceeds of the policy, since the mortgage was actually out of the picture by then. So does that mean who dies first? Yes. Because that's what you're arguing is who dies first gets the advantage. Yes, and had he died first, Ms. Thornburg-Hadler would have had no interest in the proceeds of that policy because she had waived the interest to any benefit from his having died and then triggered the release of the proceeds. It's exactly what I'm arguing, Your Honor. It's the first to die that becomes, in essence, their policy and what the parties have done. If you look at the specific language of Article VI… Yeah, is that word, how do you get to that? The first to die becomes their policy. Well, in essence… Because upon the death of the first, the policy proceeds are paid out. Are triggered, right. It is the death of that individual that triggers the proceeds. The other party to the former marriage has waived their right to any interest or benefit from the proceeds of that policy. And Your Honor is correct. Had things been worded differently, we wouldn't be here today, and that's why we need the Court's input. And I think that probably makes a lot of cases. I guess I'm still befuddled by this general release language that Justice Romer raised. I'm sorry? I guess what I'm befuddled by is the contemplation that whoever died first would get the proceeds. It would generate the proceeds based on… Because of a triggering event. It's a triggering event. And that the other party has waived his or her interest in the proceeds. That doesn't speak about ownership. It doesn't… The language in Article VI doesn't say an insurance policy owned solely by one of the parties. It says any policy owned. And it was, in fact, owned by Ms. Hagler as well as Mr. Thornburgh at the time. But it doesn't say solely owned by, and it does also include the language, unless specifically retained in this doctrine. And as the Court's pointed out, there's no specific retention of this particular licensure policy. I don't think there's any argument, Your Honor, in terms of any factual dispute about the attempts by Ms. Hagler to change the beneficiary to Ms. Warner. That was done. That was acknowledged by Jackson in the National Exams after her death that there was a dispute about whether that was done properly. But certainly, her intent was clear. She did everything within her power. But again, for this Court's purpose, the issue is, what's the meaning of the language in Article VI? And I won't belabor the point unless the Court has other questions. I would simply ask the Court that, based on the specific language of Article VI and the undisputed facts, to reverse the decision of the circuit court and award the proceeds of the life insurance policy to the appellant, Jesse Gilmore. Thank you. Thank you, Counsel. Argument for the appellate. Good morning, Your Honor. Good morning. May it please the Court. Counsel. The trial court in this decision, in this case on the cross-motion for summary judgment, was thorough, well-reasoned, and above all, the only way to logically interpret the language in the marital settlement agreement that is before the Court today. The language in this marital settlement agreement, which was drafted by the decedent's or Linda Thornbrook's attorney, basically stated that each party hereby releases in or waives any interest, beneficial or otherwise, which he or she may have acquired in or to life insurance policies. And I believe the language that the trial court level and I've asked that the appellate court level to look at, only by the other, unless specifically retained in this document. The argument that this just somehow language takes out only the money when one person dies, I've never heard that argument, never seen that argument before in a life insurance policy case, and specifically in this case where it says any interest, not just the money interest, but any interest, beneficial or otherwise, in this case. I don't believe that this language is subject to the interpretation that the appellant raises and asks this court to follow. The policy in this case was jointly owned. It was jointly owned by Linda and by Kevin, my client. It was not only, it was not only, I understand that the appellate record doesn't have it, but this was not only just for the mortgage. They had a daughter. Are you talking now outside the record? She talked a little bit outside the record, but it wasn't just for the mortgage. The mortgage was taken care of prior to the dissolution in this case. My concern is from a factual basis. Yes. If I can't go to the record and look at it, I mean, I'm glad to listen to it, but you understand our rules. I understand. Thank you. But it wasn't the only thing to cover. There was a special needs daughter, like, a special needs daughter that she alluded to. But I don't believe that this language weighs any interest in a jointly owned policy, only in a policy that was owned by the other. And I think to read the language that the appellant desires would be completely illogical in this case. Nobody would own this policy at the time that the dissolution was granted and the MSA was incorporated into the judgment. If they both gave up all the rights, then you have this policy with no beneficiary out there. And they've each given up their rights. Nobody would own the policy or the proceeds of the policy or any interest in this policy. And if you look at the record, she does continue to act as an owner after the marital settlement agreement is signed. She tries to change the beneficiary. She tried to change it in 04. She was told that she couldn't. Then she tried to change it again in 11 when she went through through the insurance company, but then was subsequently told that it wasn't done the correct way. But she had to have both owners signed. So she's acting as an owner, but then trying to argue that my client wasn't an owner anymore after the marital settlement agreement when she, in fact, herself is acting as an owner. If she continues to act as an owner, then it follows that my client was also an owner. And if he was an owner, then he was entitled to the proceeds of the policy. I don't believe the policy can just be read one-sided in this case. And that would be just that he gives up his interest, but she doesn't give up her interest in the policy. What do you have to say about Presiding Justice Schwarm's question about how we get to the triggering event? Do you agree with that argument? The appellate's argument? Yes. No, not at all. And how Section 6 applies as opposed to Section 3. I think that's what the question was. Well, there was no specific waiver, and there was no specific delegation of who owned this policy or where the proceeds of this policy would go in the marital settlement agreement. It's not mentioned in the marital settlement agreement at all. Right. So what about the release? The release released, each one released any interest in policies owned by the other, not jointly owned. I have been able to find nothing in dissolution law that says that even in a dissolution, the parties can't continue to own property together. Now, in my practice, I don't recommend that parties that get divorced continue to own property together, but there's nothing that prohibits both parties from continuing to own property together after a dissolution. And because it wasn't mentioned, I believe, and you look at her intent through what she did through the years, that she, in fact, she, her intent was to continue to own this policy, and therefore his intent was also to own the policy. It doesn't just trigger, this language doesn't just trigger when one of them dies. They had the ability to write in during the marital settlement agreement where this policy was done. They didn't. It continued to be jointly owned through the years by both of them until one of them died, and then the other one reaped the benefits of the policy that was enforced at that point in time. I have been able to find no case law, no precedent in this type of situation where we have a policy that is jointly owned and where the language says owned by the other. The case that is cited by the accountants was a case in which there was a policy that was owned separately, and that language held that it was and could be interpreted that they gave up their rights to any benefit or any interest. That's not the case here. The interest wasn't waived. It wasn't given up by either party, and I believe the record indicates that. And in a brief, in the trial court level, the appellant continued to argue that she had substantially complied in trying to change the beneficiary of 2011 to her daughter, Jesse Warner, the appellant in this case. But when she does that, I think she argues both sides. I don't think you can argue that I still owned it, but he didn't own it, and I substantially complied because I tried to then change the beneficiary without him. To substantially comply, both owners would have had to do something to try to change the policy, and if it didn't go through, then I think they could argue that there might have been substantial compliance. In this case, there wasn't. The appellant wants to continue to argue that my client gave up his interest in the policy when he didn't, but her client didn't. And because her client didn't, she can argue substantially compliance, and then they get benefits of the policy. If Ms. Hagler was still an owner in this case, then Kevin Thornburg was still an owner in this case. And if he was still an owner in this case of a jointly owned policy that was not distributed in the marital settlement agreement, when one of the parties died, the other was to get the proceeds. If my client had died before her, she would have got the proceeds. If she died before him, as in the facts, then he is entitled to the proceeds. So I ask this court to affirm the very thorough, well-reasoned, and logical decision that the trial court made in this decision. Thank you, counsel. Rebuttal? Yes, please. Just very briefly, please. First of all, I'd like to point out that there is nothing in the record that I'm aware of that indicates Ms. Harney drafted the marital settlement agreement along as indicated by Mr. Burke. With respect to the actual language that's contained in Title VI, the other statement that I'd like to explain or address by Mr. Burke was that Ms. Hagler attempted to change the policy in 2004. In 2004, there wasn't a marital settlement agreement. The parties were still married. I think that's irrelevant. She did, however, in 2011, after she was diagnosed with a terminal brain cancer, change the beneficiary. And in the record below at page 247 is the confirmation that that had been accomplished. There's nothing in the record either by argument or specifically or by document that indicates that Mr. Thornburg ever had any objection to the notice that there was a receipt, there was a change of beneficiary. If, taking Mr. Burke's argument that they're both owners, that accomplished the, I would argue therefore it accomplished the intent of the parties. But, again, I go back to the specific language of Article VI, and I agree with Mr. Burke. We've never had one exactly like this. The principal case talked, principal mutual case talked about and used this exact, this same language, but it was in a singly owned policy. But, again, in the language of Article VI, it doesn't indicate that it had to be solely owned by either party. And there's no mention of the Jackson National policy that's been issued here. And unless the court has questions, I have nothing further. Thank you. No questions. Thank you. Thank you. Thank you for your briefs, your arguments. We'll take this case under advisement and issue a ruling.